FILED

14 APR 30 PM 3: 08

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

_a/l_

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA CHYBA,<br><br>                              Plaintiff,<br><br>vs.<br><br><br>FIRST FINANCIAL ASSET<br>MANAGEMENT, INC. A.K.A.<br>FFAM,<br>                              Defendant. | CASE NO. 12-cv-1721-BEN (WVG)<br><br>**CORRECTED ORDER:**<br><br>**(1) DENYING PLAINTIFF'S<br>MOTION TO STRIKE**<br><br>**(2) GRANTING IN PART<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT**<br><br>[Docket Nos. 36, 43] |

The Court issues the following corrected order to address a factual misstatement in this Court's November 20, 2013 Order. (Docket No. 53). The only alteration from this Court's November 20 Order is the removal of a misstatement regarding Defendant's Exhibit A, the rental agreement bearing Plaintiff's name and cell phone number. Contrary to this Court's prior Order, there was no box on the rental agreement for a cell phone number. This correction does not alter the conclusions of this Court.

## CORRECTED ORDER

Before this Court is a Motion for Summary Judgment, or in the Alternative Motion for Summary Adjudication (Docket No. 36), filed by Defendant First Financial Asset Management, Inc. ("FFAM"). Upon full consideration of the briefs and

1 | submissions properly before this Court, Defendant's Motion is granted in part and
2 | denied in part.

3 | **I. BACKGROUND**

4 |     On July 11, 2012, Plaintiff Pamela Chyba ("Plaintiff") filed an action for
5 | damages against FFAM. (Docket No. 1). A First Amended Complaint (FAC) was filed
6 | on March 29, 2013. (Docket No. 28).

7 |     Plaintiff's claims are based upon four telephone calls that Defendant placed to
8 | her cellular phone between June 11, 2012 and June 25, 2012. Defendant contends that
9 | Enterprise Rent-A-Car ("Enterprise") authorized Defendant to review Plaintiff's
10 | account with Enterprise on June 1, 2011. (Marlin Decl. ¶ 4[1]). The account showed that
11 | Enterprise claimed that Plaintiff owed money to Enterprise because of damage to a
12 | rental car. (Def. Exhs. A, B, C, D). Defendant has produced documents that it claims
13 | to have received from Enterprise, including a rental agreement, (Def. Exh. A), an
14 | invoice for repair costs, (Def. Exh. B), pictures of a damaged vehicle, (Def. Exh. C),
15 | and a letter Enterprise sent to Plaintiff about the unpaid repair costs, (Def. Exh. D).
16 | Plaintiff stated that she did not give her number to Enterprise, (Opp'n at 8), did not
17 | recall renting a car, (Def. Exh. F), and did not recall if she rented a car or not (Chyba
18 | Dep., Def. Exh. I at 37:18, 39:24). She sent a letter to Defendant dated July 9, 2012
19 | disputing the debt. (Def. Exh. F).

20 |     The parties agree that Defendant placed several calls to Plaintiff on her cellular
21 | phone. (Marlin Decl. ¶ 9; FAC ¶ 1). The phone number was listed as the "home"
22 | number on the rental agreement. (Def. Exh. A). On at least four occasions, Defendant
23 | left prerecorded messages for Plaintiff. (Marlin Decl. ¶ 10; FAC ¶ 6). Plaintiff alleges
24 | that the messages stated:

25 |     This message is [for] Pamela Chyba. If you are not Pamela Chyba, please
    hang up or disconnect. If you are Pamela Chyba, you need to listen to this
26 |     message. There will now be a three second pause so that you may avoid

27 |

28 |     [1]This Court interprets sections of Plaintiff's Opposition to Defendant's Motion
for Summary Judgment as objecting to the Marlin Declaration on the basis that the
declarant lacked personal knowledge. That objection is **OVERRULED**.

disclosure of this message to other individuals. This message is from First Financial Asset Management. Please contact us at 1-800-3-4-8-7-2-4-3 regarding an important business matter. Again, the number is 1-800-3-4-8-7-2-4-3.[2]

(FAC at ¶ 4; Pl. Exh. 4). The parties also agree that Plaintiff never answered any calls from Defendant. (Marlin Decl. ¶ 10; Chyba Dep., Def. Exh. I at 72:16-19).

Plaintiff did initiate a call to Defendant on June 22, 2012. (Marlin Decl. ¶ 12; Chyba Dep., Def. Exh. I at 72:5-13). Plaintiff claims that she spoke to a person for a "minute or two" and gave him her information to look up her file, but that he did not tell her why Defendant was calling her. (Chyba Dep., Def. Exh. I at 73:25-75:24). She stated that she does not recall if she asked Defendant to stop calling. (Id. at 75:25-76:1). Plaintiff did not contend that they actually discussed the debt or her account with Enterprise during the call.

In the FAC, Plaintiff alleged that Defendant committed violations of the federal Fair Debt Collection Practices Act (FDCPA), California's Rosenthal Fair Debt Collection Practices Act (RFDCPA), and the Telephone Consumer Protection Act (TCPA).

Plaintiff alleges that Defendant: (1) violated RFDCPA by calling repeatedly or continuously with intent to annoy, abuse, or harass the Plaintiff in violation of FDCPA, (2) violated TCPA by using an automatic telephone dialer to call Plaintiff's number without express consent or an emergency purpose, (3) violated TCPA by calling Plaintiff's cellular phone, (4) violated FDCPA by failing to send Plaintiff a written notice regarding the debt after initial contact, (5) violated FDCPA by calling repeatedly with intent to annoy, abuse, or harass Plaintiff, (6) violated FDCPA by using a false representation or deceptive means to collect or attempt to collect a debt or obtain information concerning a consumer, (7) violated FDCPA by using a false representation or deceptive means to collect a debt or attempt to collect a debt by

///

---

[2]There are minor variations between the FAC and Plaintiff's Exhibit 4, which are not relevant to this Court's Order. This is the version from Plaintiff's Exhibit 4.

12cv1721

1  stating that Defendant represents a separate entity.

2      At the close of discovery, Defendant moved for summary judgment on all claims.

3  **II. LEGAL STANDARD**

4      Summary judgment is appropriate when "there is no genuine dispute as to any

5  material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV.

6  P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In

7  considering a summary judgment motion, a court examines the evidence in the light

8  most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654,

9  655 (1962).

10      A moving party bears the initial burden of showing there are no genuine issues

11  of material fact. *Travelers Indem. Co. v. Arena Grp. 2000, L.P.*, No. 05-cv-1435, 2007

12  WL 4170421, at *5 (S.D. Cal. Nov. 20, 2007) (citing *Celotex Corp. v. Catrett*, 477

13  U.S. 317, 323 (1986)). It can do so by negating an essential element of the non-

14  moving party's case, or by showing that the non-moving party failed to make a

15  showing sufficient to establish an element essential to that party's case, and on which

16  the party will bear the burden of proof at trial. *Id.* The burden then shifts to the non-

17  moving party to show that there is a genuine issue for trial. *Id.*

18      The moving party must support their assertion that a fact is not subject to

19  genuine dispute by either a) citing to materials in the record, such as depositions,

20  documents, electronically stored information, affidavits or declarations, stipulations,

21  admissions, interrogatory answers, or other materials; or b) showing that the materials

22  cited do not establish the absence or presence of a genuine dispute, or that an adverse

23  party cannot produce admissible evidence to support the fact. FED. R. CIV. P. 56(c)(1).

24      On a motion for summary judgment, a party does not necessarily have to produce

25  evidence in a form that would be admissible at trial, as long as the requirements of

26  Federal Rule of Civil Procedure 56 are met. *Fraser v. Goodale*, 342 F.3d 1032, 1036-

27  37 (9th Cir. 2003) (citation omitted). Where material cited to support or dispute a fact

28  cannot be presented in a form that would be admissible in evidence, a party is permitted

1  to object. FED. R. CIV. P. 56(c)(2). Affidavits or declarations used to support or oppose
2  a motion must be made on personal knowledge, set out facts that would be admissible
3  in evidence, and show that the affiant or declarant is competent to testify on the matters
4  stated. FED. R. CIV. P. 56(c)(4).

5      "Only disputes over facts that might affect the outcome of the suit under the
6  governing law will properly preclude the entry of summary judgment. Factual disputes
7  that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. As
8  a general rule, the "mere existence of a scintilla of evidence" will be insufficient to
9  raise a genuine issue of material fact; there must be evidence on which the jury could
10 reasonably find for the non-moving party. *Id.* at 252.

11 **III. DISCUSSION**
12      **A. Plaintiff's Affidavit**
13      As an initial matter, this Court addresses a dispute between the parties
14 concerning the propriety of evidence offered by Plaintiff. As part of her Opposition
15 to Defendant's Motion for Summary Judgment (Docket No. 38), Plaintiff submitted an
16 affidavit containing her own statements. (Docket No. 38-1). Defendant filed an
17 Objection on June 6, 2013. (Docket No. 42). Plaintiff filed a Motion to Strike the
18 Objection on June 10, 2013. (Docket No. 43).

19      Plaintiff asks this Court to strike the Objection on three grounds. First, she
20 claims that Defendant's counsel cannot testify for the Defendant while acting in the
21 capacity of Defendant's counsel. (Mot. to Strike at 2). She asks this court to strike any
22 alleged fact advanced by counsel not supported by a proper document from someone
23 with personal knowledge. (*Id.* at 3). However, the Objection contained only
24 evidentiary objections to the affidavit, and no statement of Defendant's counsel was
25 submitted as evidence.

26      Second, Plaintiff claims that Defendant did not rebut Plaintiff's affidavit in a
27 timely manner or in a proper format under the Local Rules and Federal Rules of Civil
28 Procedure. (*Id.* at 4). Review of the Objection indicates that it contains evidentiary

1  objections, and is not offering new evidence to rebut the assertions in Plaintiff's
2  affidavit.   Evidentiary objections to evidence offered on a Motion for Summary
3  Judgment are expressly permitted by Federal Rule of Civil Procedure 56(c)(2).

4          Third, Plaintiff claims that Defendant did not rebut her affidavit with an
5  affidavit, and that an unrebutted affidavit stands as truth.  (Mot. to Strike at 4-5).
6  However, as noted above, a party is permitted to raise evidentiary objections to the
7  evidence offered by the opposing party.  Defendant did not seek to enter conflicting
8  evidence, it merely pointed to alleged evidentiary problems in Plaintiff's affidavit. (*See*
9  Objection).

10         The Motion to Strike is therefore **DENIED.**

11         **B.  The Parties' Objections**

12         Defendant's Objection raises 22 evidentiary objections to the two-and-a-half
13 pages of substance in Plaintiff's affidavit. Defendant's Objections are **OVERRULED**
14 to the extent not inconsistent in this opinion.   This Court interprets Plaintiff's
15 discussion of Defendant's evidence in her Opposition as raising objections to the
16 evidence offered by Defendant. Plaintiff's objections are **OVERRULED** to the extent
17 not inconsistent with this opinion.

18         This Court specifically notes that Plaintiff is not correct in stating that
19 Defendant's Motion and most of its evidence are inadmissible because Defendant's
20 counsel cannot testify on behalf of Defendant. (Opp'n at 3). Defendant's counsel filed
21 the motion and supporting documents. An attorney is allowed to submit arguments and
22 evidence to a court, and they are not testifying for their client.  Indeed, this is the job
23 of counsel. Defense Counsel Christopher Holt did submit a declaration. (Docket No.
24 36-3). However, this declaration only served to verify that certain exhibits attached by
25 the Defendant were true and correct copies of documents that Holt propounded and
26 received, and that other documents were from a deposition he conducted.  (*Id.*). These
27 matters are all within his personal knowledge, and serve to authenticate the evidence.
28 Holt offers no evidence about the dispute.

**C. Alleged Violation of 15 U.S.C. § 1692d(5) (Count V)**

Plaintiff alleges in her FAC that Defendant violated 15 U.S.C. § 1692d(5), which prohibits debt collectors from "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." (FAC at 4, 7-8).

To prove her claim, Plaintiff will need to show that repeated calls were made with the requisite intent to annoy, abuse, or harass. *See Gorman v. Wolpoff & Abramson, LLP*, 435 F. Supp. 2d 1004, 1012 (N.D. Cal. 2006), *rev'd on other grounds*, 584 F.3d 1147 (9th Cir. 2009); *Krapf v. Nationwide Credit Inc.*, No. SACV 09-0711, 2010 WL 2025323, at *3 (C.D. Cal. May 21, 2010). Defendant asserts that, as a matter of law, four phone calls is insufficient to state a claim under § 1692d, absent some other evidence of intent to harass. (MSJ at 5).

In assessing whether the requisite intent exists, courts often consider the volume and pattern of calls. *See, e.g., Krapf,* 2010 WL 2025323, at *3; *Sanchez v. Client Servs., Inc.*, 520 F. Supp. 1149, 1161 (N.D. Cal. 2007). Courts have looked at the number of calls in a day or short period of time, and considered whether calls were made to family members. *See, e.g., Sanchez*, 520 F. Supp. 2d at 1160-61. Courts have considered the time of day the calls were placed. *See, e.g., Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F. Supp. 2d 492 (D. Md. 2004). Courts have also considered whether the defendant actually reached the plaintiff, and whether defendant was asked to stop calling. *See, e.g., Tucker v. The CBE Grp., Inc.*, 710 F. Supp. 2d 1301, 1305 (M.D. Fla. 2010). Where a defendant calls repeatedly and the plaintiff does not answer a large majority of the calls, courts have found that the volume of calls suggests the difficulty of reaching the plaintiff, rather than an intent to harass. *Id.* (not reasonable to infer intent to harass where 57 total calls were made, including 7 in one day, where defendant never actually spoke to the plaintiff); *Saltzman v. I.C. Sys., Inc.*, No. 09-10096, 2009 WL 3190359, at *7 (E.D. Mich. Sept. 30, 2009) (defendant lacked requisite intent where plaintiff claimed approximately 60 calls in a month, but success

1  ratio was at best 1:5).

2         In the case at hand, Plaintiff has alleged that at least four calls were made to her

3  phone between June 11, 2012 and June 25, 2012, and four prerecorded messages were

4  left. (*See, e.g.*, FAC ¶¶ 1, 6-8, 26). Plaintiff does not allege, much less offer any

5  evidence that she was called at an unusual hour, or that she received multiple calls in

6  a short period of time. In support of her Opposition to the Motion for Summary

7  Judgment, Plaintiff submitted call logs. (Pl. Exh. 4). Although certain pages are

8  difficult to read and this Court cannot discern the dates with confidence, the calls

9  appear to have been placed at approximately 10:00 a.m., 8:45 a.m., 12:05 p.m. and 1:27

10  p.m. (*Id.*). Plaintiff also submitted transcriptions of two messages left on her cell

11  phone. (Pl. Exh. 4). The transcriptionist noted that an automated voice after the

12  message stated they were received on June 19 at 12:50 p.m. and June 27 at 2:06 p.m.

13  (*Id.*). Plaintiff therefore appears to have been called during reasonable hours. There

14  is no evidence that Plaintiff was ever called multiple times on a given day.

15         Plaintiff also conceded that she never answered the phone. (Chyba Dep., Def.

16  Exh. I at 72:16-19). The substance of the message, as related by Plaintiff and in

17  transcriptions produced by Plaintiff, requested only that she communicate regarding

18  an "important business matter," and did not mention a debt. (Pl. Exh. 4). Plaintiff does

19  not claim that Defendant made any threats, that Defendant called any other numbers,

20  or that Defendant ever tried to contact other parties, such as family, friends, or work

21  colleagues.

22         Plaintiff has the burden to show that Defendant called her with the requisite

23  intent. Plaintiff's own allegations and evidence demonstrate that Plaintiff cannot carry

24  this burden such that a reasonable factfinder could determine that Defendant had the

25  necessary intent. Plaintiff has produced evidence of, at most, six telephone calls, all

26  at reasonable hours. Critically, Defendant continued to call every few days and leave

27  messages after Plaintiff had not answered her phone at all. The evidence is consistent

28  with an intent to reach Plaintiff, and falls far short of the evidence required to support

1  an "intent to harass, abuse, or annoy." As a matter of law, Defendant's actions do not

2  rise to the level of harassment under § 1692d.

3      Plaintiff's specific argument regarding § 1692d(5) in her Opposition emphasizes

4  her contention that Defendant did not have her consent, (Opp'n at 8-9), as well as

5  alleged admissions by Defendant that it called her, left prerecorded messages, had no

6  contract with her, and did not have her permission to call her, (Opp'n at 10). However,

7  Plaintiff does not address Defendant's arguments about intent, and makes no argument

8  that the evidence shows that a reasonable factfinder could determine that Defendant

9  had the requisite intent.  Even presuming, *arguendo*, that Defendant lacked authority

10 to contact her and all other elements were proven, Plaintiff must still provide enough

11 evidence to show there is a genuine issue for trial on the question of intent.  She does

12 not point to any evidence of additional harassing acts from which this Court could

13 conclude that she could meet her burden.  In short, although Plaintiff emphasizes her

14 contention that she meets one element of a claim (lack of consent to call), she fails to

15 meet her burden on another essential element.  A moving party can meet its burden by

16 negating an essential element of the non-moving party's case, or showing that the non-

17 moving party has failed to make a sufficient showing to establish an essential element

18 of their case for which they have the burden of proof at trial.  *Travelers*, 2007 WL

19 4170421, at *5.  In the case at hand, Defendant has demonstrated that Plaintiff has

20 failed to make a sufficient showing to establish the intent to harass element.  Plaintiff's

21 claim under § 1692d(5) must fail.  As such, summary judgment on the federal claim

22 (Count V) is **GRANTED**.

23      **D. Rosenthal Fair Debt Collection Practices Act (Count I)**

24      In Count I of the FAC, Plaintiff also asserts that by violating the federal FDCPA,

25 Defendant also violated California's RFDCPA, which requires compliance with certain

26 provisions of FDCPA.  CAL. CIV. CODE § 1788.17.  (FAC at 4).  Careful examination

27 of Plaintiff's Complaint demonstrates that Plaintiff asserts only that RFDCPA was

28 ///

1 violated by Defendant's violation of § 1692d(5). (FAC ¶¶ 12-13). As that claim fails,
2 as stated above, summary judgment is also **GRANTED** as to Count I.

3       **E.   Violation of 15 U.S.C. § 1692g (Count IV)**

4      Plaintiff claims that Defendant committed violations of § 1692g. Specifically
5 she cites subdivision (a), the notice provision. The provision requires that a debt
6 collector, within five days after the "initial communication with a consumer in
7 connection with the collection of any debt," send a written notice containing certain
8 information. 15 U.S.C. § 1692g(a).

9      Defendant first claims that Plaintiff cannot succeed on FDCPA violations
10 because she has not produced any evidence that she was a "consumer" contacted in
11 connection with a "debt," as those terms are defined by FDCPA. (MSJ at 8).

12      A "consumer" is a natural person obligated or allegedly obligated to pay any
13 debt. 15 U.S.C. § 1692a(3). There does not appear to be any dispute that Plaintiff is
14 a natural person. Additionally, Defendant itself admits that it did attempt to contact her
15 about a debt. (Pl.'s Requests for Admission, Pl. Exh. 1, at 6:3-5). However, Defendant
16 emphasizes that a "debt" within the meaning of the statute must arise, or allegedly
17 arise, out of a transaction, the subject of which is "primarily for personal, family, or
18 household purposes." 15 U.S.C. § 1692a(5). A court has found that an effort to collect
19 money owed because of damage to a car rented for personal reasons is covered by
20 FDCPA protections. *Yelin v. Swartz*, 790 F. Supp. 2d 331, 335 (E.D. Pa. 2011).
21 However, Defendant argues that Plaintiff has failed to establish that this debt was
22 incurred for personal, family, or household purposes.

23      The Ninth Circuit has had occasion to address the question of when a debt is
24 incurred for "personal, family, or household purposes." The Ninth Circuit found that
25 $5,000 borrowed from a friend to be used as venture capital was a business loan
26 outside FDCPA protections. *Bloom v. I.C. Sys.*, 972 F.2d 1067, 1068 (9th Cir. 1992).
27 The Ninth Circuit stated that in classifying a loan, courts typically examine "the
28 transaction as a whole, paying particular attention to the purpose for which the credit

1  was extended." *Id.* (citation omitted).  It also examined the capacity in which the
2  borrower accepted the loan, and held that the lender's motives are not relevant. *Id.* In
3  *Slenk v. Transworld Sys. Inc.*, 236 F.3d 1072, 1073 (9th Cir. 2001), the Ninth Circuit
4  considered the case of a loan taken out in a company's name that was used to purchase
5  a backhoe that was only used for personal purposes.  The district court considered the
6  fact that the company's name was on the invoice, that the company's name was used
7  on the building permit where work was done, and that the backhoe was on the
8  company's tax return. *Id.* at 1073-74.  However, the Ninth Circuit stated that the
9  district court should also have considered the loan documents, the actual use of the
10 backhoe for personal purposes, and the fact that the company did not use the backhoe.
11 *Id.* at 1075-76.

12     In *Hansen v. Ticket Track, Inc.*, 280 F. Supp. 2d 1196, 1203-04 (W.D. Wash.
13 2003), a district court found that summary judgment on FDCPA claims regarding
14 money owed for parking was inappropriate, even though the plaintiffs could not recall
15 why they had parked.  The court found that it qualified as a "debt" because it was
16 incurred in a personal capacity and paid with personal funds. *Id.* at 1204.

17     The analysis in the case at hand is complicated by the fact that not only might
18 a car rental be either a business or consumer transaction, but Plaintiff disputes owing
19 the debt at all.  Plaintiff does not assert that she rented a car for personal use, instead
20 variously disputing that she rented the car at all, or stating that she cannot remember
21 if she rented the car.  This Court notes that although Defendant has produced
22 documentation from Enterprise that purports to show that Enterprise told Defendant it
23 was owed a debt, a reasonable factfinder might or might not be persuaded by Plaintiff
24 that she never rented a car.  Defendant cannot evade liability for actions taken to collect
25 a debt that is now disputed on the basis that, in disputing that the debt exists, she has
26 failed to show it was a personal, family, or household debt.  This interpretation of the
27 statute would render meaningless protections for consumers where the debt collector
28 attempts to collect on a debt the consumer does not owe, and the nature of the alleged

12cv1721

1  debt is unclear.

2        Regardless, this Court finds that Defendant has not met its burden of showing
3  that no reasonable factfinder could conclude that the alleged debt is a consumer debt
4  within the meaning of FDCPA.  Plaintiff allegedly rented a vehicle in her personal
5  capacity.  Her name appears on the paperwork, and no party has drawn this Court's
6  attention to any reference to a business on the rental documents.  The fact that certain
7  statements in Plaintiff's deposition suggest that she sometimes rents cars for business
8  purposes is far from sufficient to allow Defendant to meet its burden, given the other
9  evidence in the record.  *See also McCorriston v. LWT, Inc.*, 536 F. Supp. 2d 1268
10 (M.D. Fla. 2008) (summary judgment precluded where the plaintiff did not recall what
11 account was used for, speculated it was for household expenses, and defendant did not
12 rebut this evidence).

13       Defendant also asserts that there was no "communication" related to a debt, as
14 required to trigger § 1692g, because Plaintiff never answered any calls.  (MSJ at 9).
15 FDCPA defines "communication" as "the conveying of information regarding a debt
16 directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2).

17       Courts have held that pre-recorded messages on answering machines constitute
18 communications, even where the defendant did not engage in conversation with the
19 plaintiff and the message never referenced a debt.  *Foti v. NCO Fin. Sys., Inc.*, 424 F.
20 Supp. 2d 643, 654-57 (S.D.N.Y. 2006); *Hosseinzadeh v. M.R.S. Assoc. Inc.*, 387 F.
21 Supp. 2d 1104, 1116 (C.D. Cal. 2005).  Other courts have held the same with regard
22 to message left by a natural person. *Koby v. ARS Nat'l Servs. Inc.*, 09-cv-0780, 2010
23 WL 1438763, at *3-4 (S.D. Cal. Mar. 29, 2010) (messages were "communication" for
24 purposes of §1692e where calls were left to encourage the plaintiff to call, the
25 defendant intended to contact her or be contacted by her in order to collect a debt, and
26 the defendant had no purpose other than encouraging the plaintiff to pay the debt;
27 messages were not communication where they only included the caller's name and
28 asked for a return call); *Costa v. Nat'l Action Fin. Servs.*, 634 F. Supp. 2d 1069, 1076

1 (E.D. Cal. 2007).

2    Defendant left a series of pre-recorded messages on Plaintiff's cellular telephone.
3 Plaintiff has provided a certified copy of the transcription of the recorded messages.
4 (Pl. Exh. 4). Those messages do not use the word "debt," but they tell her that "you
5 need to listen to the message," give a three-second pause to avoid disclosure to others,
6 state that the message is from First Financial Asset Management, and ask her to contact
7 a certain number "regarding an important business matter." (*Id.*) Such calls constitute
8 a "communication" within the meaning of § 1692a. Information was conveyed
9 regarding a debt, even though a "debt" was not explicitly mentioned, through the
10 medium of a recorded message on an answering machine. Plaintiff was contacted
11 about the debt and encouraged to call. The purpose of the call was only to collect upon
12 that debt.

13    The evidence in the record is sufficient to allow a reasonable factfinder to
14 determine that the Defendant was seeking to collect on a consumer debt, and that the
15 first message left on Plaintiff's machine was an initial communication requiring
16 Defendant to fulfill § 1692g requirements. Summary judgment is therefore **DENIED**
17 as to Count IV.

18    The Court notes that Plaintiff only cited to subdivision (a) of § 1692g. To the
19 extent that Plaintiff's Complaint could be liberally construed to include a claim under
20 1692g(b) for misconduct after a debt is disputed, Defendant is correct in asserting that
21 there is no evidence suggesting that Defendant sought to collect the debt after she
22 informed Enterprise in a letter dated July 9, 2012 that she disputed the account. (Def.
23 Exh. F). The Court **GRANTS** summary judgment as to any claims that Plaintiff may
24 have attempted to raise with regard to § 1692g(b).

25    **F. 15 U.S.C. § 1692e  (Counts VI and VII)**

26    FDCPA bans the use of false or misleading representations in connection with
27 the collection of any debt. 15 U.S.C. § 1692e. Determining whether conduct violates
28 § 1692e is an objective analysis that takes into account whether the "least sophisticated

1    debtor would likely be mislead by a communication." *Donohue v. Quick Collect, Inc.*,

2    592 F.3d 1027, 1030 (quoting *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 934

3    (9th Cir. 2007)).

4        Specifically, Plaintiff alleges that Defendant violated subsection (2)(A), "false

5    representation of the character, amount, or legal status of an debt" (Count VII), and

6    subsection (10), "use of any false representation or deceptive means to collect or

7    attempt to collect any debt or to obtain information concerning a customer" (Count VI).

8        Defendant argues that the FAC never alleged any false representation or

9    deceptive means, and states that no such representation could have taken place since

10   there was no substantive communication between Plaintiff and Defendant about the

11   debt. (MSJ at 9). This Court notes that the only misrepresentation alleged in Plaintiff's

12   FAC is "stating that FFAM represents a totally separate entity" in Count VII. (FAC

13   ¶ 30). Defendant claims that, contrary to Plaintiff's claims, undisputed facts show that

14   Enterprise did authorize Defendant to review the account. Defendant also claims that

15   Plaintiff has not alleged or produced any evidence of a false or misleading

16   communication. (MSJ at 9).

17           **i. Claim That Enterprise was Misrepresented to be a Party**

18        In her Opposition, Plaintiff points out that there is no evidence on the record that

19   Enterprise is a party to the instant case, and that nowhere in Plaintiff's complaint is

20   Enterprise ever mentioned. (Opp'n at 15). She claims that Defendant violated the

21   statute by stating it represents a totally separate entity. (*Id.*) She states that this was

22   a false representation of the character, amount, or legal status of any debt. (*Id.*). This

23   claim fails on two bases.

24        First, Plaintiff has failed to produce any evidence to show that any Defendant

25   ever communicated that it was representing a separate entity. Plaintiff has not

26   identified a communication where Defendant says that it is acting on behalf of

27   Enterprise or any other party. Plaintiff did not answer the calls placed to her phone, the

28   messages she submits do not mention that Defendant is representing another, (Pl. Exh.

1  4), and there is no evidence that any mention was made of representing another party
2  during her phone call to Defendant on June 22.

3      Even if such a statement were made, Plaintiff offers no evidence that it would
4  be a misrepresentation. Although Plaintiff has stated a personal belief that Defendant
5  was not acting for Enterprise, she has not produced admissible evidence that suggests
6  that Enterprise did not place an account, or evidence that raises a question regarding
7  the validity of the documents produced by Defendant. The knowledge would not be
8  within the personal knowledge of Plaintiff, rendering her unsupported beliefs
9  inadmissible evidence.

10      Plaintiff points to Defendant's admission that it did not have an "agency"
11  relationship with Enterprise, (Pl.'s Req. for Adm., Pl. Exh. 1 at 4:15-22), and points out
12  that there is nothing on the record or in discovery that shows any "contract, agreement,
13  consent, transfer, sale, assignment by and between Defendant and Enterprise." (Opp'n
14  at 15). However, the fact that there was no "agency relationship" does not support a
15  contention that there was *no* relationship between Defendant and Enterprise.
16  Defendant denies that it does not have any agreement with Enterprise regarding
17  Plaintiff's alleged Enterprise debt. (Pl. Req. for Adm., Pl. Exh. 1 at 4:21-22).

18      Additionally, although Defendant did not submit any documentation supporting
19  its contention that it has some relationship or agreement with Enterprise, beyond its
20  possession of what appear to be internal Enterprise documents, it did submit a sworn
21  declaration from Janesta Marlin, the Director of Compliance for Defendant. (Marlin
22  Decl.). In her declaration, Marlin specifically asserts that she is "familiar with the
23  documents and files maintained by Defendant related to the Enterprise account," and
24  that Enterprise sent an account to Defendant for review that had been incurred by
25  Plaintiff. (*Id.* ¶ 4). In her Opposition, Plaintiff challenges Marlin's declaration,
26  including the relevant paragraph. (Opp'n at 6). Plaintiff states that Marlin is speaking
27  on behalf of Plaintiff and Enterprise, and claims Marlin has no firsthand knowledge.
28  However, Plaintiff conceded Marlin had personal knowledge to say she was a

1    compliance director (Opp'n at 5), and Marlin established a foundation for her personal

2    knowledge of Plaintiff's account and the Enterprise documents described in her

3    declaration. (Marlin Decl. ¶¶ 3-4). Plaintiff also objects that Marlin is not competent

4    to testify at trial because she has stated she is unable to travel to various court

5    appearances. (Opp'n at 6). However, at the summary judgment stage, the court

6    examines whether the substance of the evidence is admissible even if it is inadmissible

7    in its current form. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (diary

8    attached to affidavit admissible because it was based on affiant's personal knowledge

9    and its contents could be admitted at trial in a variety of ways). Plaintiff's objection

10   is **OVERRULED**.

11               **ii.  Claim That Defendant Attempted to Deceive Plaintiff Into**

12                     **Thinking It Had a "Business Matter" With Plaintiff**

13        Plaintiff accuses Defendant of trying to deceive Plaintiff into believing that

14   Plaintiff had a "business matter" with Defendant. (Opp'n at 15). As stated above,

15   Plaintiff has produced no evidence to dispute the fact that Enterprise placed an account

16   with Defendant to collect a debt from Plaintiff. As such, there is no evidence in the

17   record that Defendant did not have a "business matter" to discuss with her. Plaintiff

18   emphasizes the lack of a direct nexus, but Defendant has produced undisputed evidence

19   that it had a business matter to discuss as a result of its relationship with Enterprise.

20   There is therefore no evidence that Defendant sought to deceive Plaintiff when it stated

21   it needed to speak with her regarding a business matter.

22        Plaintiff has produced no admissible evidence to create a genuine issue of

23   material fact as to her claims under § 1692e. Summary judgment is therefore

24   **GRANTED** as to Counts VI and VII.

25               **G. TCPA Claims (Counts II and III)**

26        Plaintiff alleges violations of TCPA in Counts II and III, based on the use of an

27   automatic dialer to dial her cellular telephone number. To prove a claim under TCPA,

28   a plaintiff must show that 1) the defendant called a cellular telephone number, 2) using

1   an automatic telephone dialing system; 3) without the recipient's prior consent. 47
2   U.S.C. § 227(b)(1). Here, there is no dispute that Defendant called Plaintiff's cell
3   phone. Defendant does not argue that TCPA violations fail because it did not use an
4   automatic dialing system.

5          The parties disagree about whether there is a genuine dispute of material fact as
6   to whether Defendant had prior consent to call Plaintiff's cell phone. The statute
7   specifically exempts from liability a caller who has consent to call the cellular
8   telephone number. 47 U.S.C. § 227(b)(1)(A). Prior express consent is an affirmative
9   defense to be raised and proved by a TCPA defendant. *Robbins v. Coca-Cola-Co.*, No.
10  13-cv-132, 2013 WL 2252646, at *2 (S.D. Cal. May 22, 2013) (citing *Connelly v.*
11  *Hilton Grant Vacations Co., LLC*, No. 12-cv-599, 2012 WL 2129364, at *3 (S.D. Cal.
12  June 11, 2012)).

13         Defendant claims that it had consent because Plaintiff provided her cellular
14  telephone number to Enterprise, listing it as her home telephone number. (MSJ at 10-
15  11). Defendant claims Enterprise then gave this information to Defendant. (*Id.* at 11).
16  When a consumer provides a cellular telephone number to a creditor as part of the
17  underlying transaction, the provision of the number constitutes express consent for the
18  creditor to contact the consumer about the debt. *In re Rules and Regs. Implementing*
19  *the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559, 564-65 (2008)
20  (2008 Ruling); *Chavez v. Advantage Grp.*, No. 12-cv-2819, 2013 WL 4011006, at *2
21  (D. Colo. Aug. 5, 2013) (also noting that district courts do not have jurisdiction to
22  review the 2008 Ruling). Calls placed by a third-party debt collector on behalf of the
23  creditor are treated as if the creditor itself placed the call. (2008 Ruling at 565).
24  Furthermore, if there is a question as to whether express consent has been provided, the
25  burden is on the creditor on whose behalf the call is made, and the creditor bears
26  responsibility for violations of FCC rules for calls made on its behalf. (*Id.*)

27         Defendant admits to being a third-party debt collector. (Pl.'s Req. for Adm. at
28  2:23-25). As discussed above, Defendant has produced undisputed evidence that it was

1    acting to collect a debt for Enterprise.  Therefore, if Enterprise had Plaintiff's express
2    consent to call her phone, then Defendant is excepted from liability under TCPA.

3        However, Plaintiff disputes that she ever gave Enterprise her consent.  Plaintiff
4    disputed the debt on July 9, 2012 (Def. Exh. F), denied giving Enterprise her number
5    (Opp'n at 8), and has also stated that she cannot recall whether or not she rented the car
6    (Pl. Exh. I at 37:16-18, 39:19-40:3).  Defendant has produced a copy of a rental
7    agreement between Enterprise and "Pamela Chyba." (Def. Exh. A).  However, a
8    reasonable factfinder might find, despite the variations in Plaintiff's testimony, that
9    Plaintiff never gave express consent because she never gave her phone number to
10   Enterprise.

11       Defendant also argues that it has produced undisputed evidence that it had a
12   good-faith belief that Plaintiff had given her consent, and that this should preclude
13   TCPA liability even if Plaintiff never rented a car or gave her consent to be contacted
14   at that phone number.  As stated above, the FCC has stated that the creditor bears
15   responsibility for violations of FCC rules for calls made on its behalf.  (2008 Ruling
16   at 565).  In the context of FDCPA, the Ninth Circuit has found that debt collectors have
17   a limited obligation to verify the underlying debt.  In *Clark v. Capital Credit &*
18   *Collection Services*, 460 F.3d 1162, 1174 (9th Cir. 2005), the Ninth Circuit found that
19   a debt collector was entitled to rely on the creditor statement's to verify the debt.  The
20   Ninth Circuit cited to case law suggesting that a collector could reasonably rely upon
21   information provided by a creditor who had been accurate in the past.  *Id.*  It also held
22   that the FDCPA did not impose any duty on the debt collector to independently
23   investigate the claims.  *Id.* (citations omitted).  It would be incongruous with the larger
24   statutory and regulatory scheme to interpret TCPA to require that a debt collector be
25   liable for acting where it had a good-faith basis for doing so.

26       Here, the documents provided gave Defendant a good-faith basis to believe that
27   it had consent to contact Plaintiff at that number.  The Court notes that the cell number
28   listed as her "home" number.  There appears to have been little that the Defendant

could have done to further ascertain whether there was consent, except to call Plaintiff at her home number.

In her Opposition, Plaintiff claims that Defendant has failed to provide any evidence on the record of Defendant's authorization to call the Plaintiff.  She also claims that Defendant has no direct or indirect "nexus" with Plaintiff, and there is nothing on the record to show otherwise. (Opp'n at 2).  Plaintiff's characterization of the record is incorrect.  Defendant has produced admissible evidence demonstrating that it had a relationship with Enterprise that would allow it to use consent given to Enterprise.

Thus, although Plaintiff did not give consent directly to Defendant to call her cell phone number, it is sufficient that Defendant had a good-faith basis to believe that Plaintiff had provided consent to the creditor on whose behalf Defendant sought to collect a debt.  Even if Plaintiff is correct in stating that she never gave Defendant or Enterprise consent to call, and there was no *actual* prior consent from Plaintiff, Defendant is not liable for acting in good faith upon the information provided to it.

This Court therefore **GRANTS** summary judgment as to Counts II and III.

## IV. CONCLUSION

Summary judgment is therefore **GRANTED** as to Counts I, II, III, V, VI, and VII.  Summary judgment is **DENIED** as to Count IV.

**IT IS SO ORDERED.**

Dated: 4/30, 2013

HON. ROGER T. BENITEZ
United States District Judge;

12cv1721